UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK MORAN and PATRICIA BAILEY WHITE, individually and on behalf of a class of similarly situated persons,<br><br>Plaintiffs,<br><br>v.<br><br>HUGH BROMMA, JAY PEARSON a/k/a JERRY PEARSON a/k/a JERRY O. PEARSON, JR., ENTRUST MID-SOUTH, LLC n/k/a/ MID SOUTH RETIREMENT SERVICES, LLC, THE ENTRUST GROUP, INC., and ENTRUST ADMINISTRATION, INC.,<br><br>Defendants. | No.  13-cv-00487 JAM-CKD<br><br>**ORDER GRANTING ENTRUST DEFENDANTS' MOTION TO DISMISS** |

This matter is before the Court on Defendants Hugh Bromma ("Bromma"), The Entrust Group, INC. ("TEG"), and Entrust Administration, INC.'s ("Entrust Admin") (collectively "Entrust Defendants") Motion to Dismiss (Doc. #18) Plaintiffs' First Amended Complaint ("FAC") (Doc. #16).  Plaintiffs Mark Moran ("Moran") and Patricia Bailey White ("White") (collectively "Plaintiffs") oppose the motion (Doc. #21) and Entrust Defendants replied (Doc. #24).[1]  For the following reasons, Entrust

---

[1] This motion was determined to be suitable for decision without oral argument.  E.D. Cal. L.R. 230(g).  The hearing was scheduled for August 7, 2013.

1

Defendants' motion is GRANTED.

I.   FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

Plaintiffs filed this action on March 11, 2013, against the Entrust Defendants, Entrust Mid-South, LLC ("Mid-South"), and Jerry Pearson ("Pearson") (Doc. #1).  On May 21, 2013, Plaintiffs filed a FAC, the operative complaint, alleging six causes of actions: (1) conversion against all Defendants; (2) intentional fraud against Pearson; (3) intentional fraud against all Defendants; (4) violation of California's Elder Abuse and Dependent Adult Civil Protection Act, Welfare and Institutions Code § 15600 et seq., against all Defendants; (5) Unfair Competition ("UCL") claim, Business and Professions Code § 17200 et seq., against all Defendants; and (6) civil Racketeer Influenced and Corrupt Organizations ("RICO") claim, 18 U.S.C. § 1961 et seq., against all Defendants. FAC ¶¶ 240-301.

Plaintiffs allegedly invested in Self-Directed Individual Retirement Accounts ("IRAs") administered by Entrust Defendants. FAC ¶ 1.  A Self-Directed IRA is an IRA held by a trustee or custodian that permits investment in a broader set of assets than is permitted by most IRA custodians. Id. ¶ 1 n.1.  Bromma was allegedly the CEO of TEG and Entrust Admin. Id. ¶ 2.  Mid-South was allegedly a licensee of Entrust Admin and Pearson was a principal of Mid-South. Id. ¶¶ 3, 8.

A.   Plaintiff Mark Moran

On or about October 2007, Moran allegedly invested approximately $34,000 through an Entrust Self-Directed IRA. Id. ¶ 46.

2

After attending a Loral Langemeier's ("Langemeier") investment seminar and hearing Pearson speak, Moran spoke to Pearson about investing through an Entrust Self-Directed IRA and suggested several companies for investment, particularly Out of the Box Holdings, LLC ("Out of the Box"). Id. ¶¶ 158-159. Pearson allegedly told Moran that he would take Moran's investment money to invest in Out of the Box and pay Moran 12% interest. Id. ¶ 161. An unsecured promissory note that matured on July 15, 2008, would evidence the investment. Id. However, the promissory note was not signed and had no date of repayment. Id. ¶ 162. Moran's money was wired to an account controlled by Pearson in October 2007. Id. ¶ 164. Following the transfer, he allegedly received several statements from the Entrust Defendants indicating different values for his account. Id. ¶ 166-167.

Moran allegedly received less than the 12% in interest he was supposed to receive and he only received one payment in 2008, even though his "account statements reflected that the promissory note expired on July 15, 2008, meaning that money was due to be returned at that time." Id. ¶ 168.

Moran allegedly called Pearson repeatedly and told Pearson's assistant that he wanted his money back when his promissory note expired in July 2008, but Pearson never responded and Moran never got his money back. Id. ¶ 170. In 2010, Moran called TEG to have his money returned but a TEG representative told him that was not possible. Id. ¶ 181. In 2011, Moran was allegedly told that Pearson was no longer with Entrust. Id. ¶ 183. Finally, his statement in 2012 allegedly showed that his account was valued at $34,000.43. Id. ¶ 185.

B. <u>Plaintiff Bailey White</u>

On or about July 2006, White, who is 66 years old, allegedly invested $120,000 through an Entrust Self-Directed IRA. <u>Id.</u> ¶ 46.

White's acquaintances were raising money to invest in Langemeier and Pearson's company called Crumb R Us ("CRU"). <u>Id.</u> ¶ 192. White was told to transfer her retirement money to a Mid-South Self-Directed IRA through Pearson to invest in CRU. <u>Id.</u> ¶ 193. In July 2006, White opened a Self-Directed IRA and had $146,631.04 wired to Mid-South out of which $120,000 was invested with CRU and the balance was placed in an unrelated investment. <u>Id.</u> ¶ 194. In return, White received an unsecured promissory note that accrued interest at a yearly rate of 12% and expired on October 15, 2007. <u>Id.</u> ¶ 195. White allegedly received payments on the note for 2006 and 2007 and she then decided to extend the promissory note. Id. ¶ 198.

In the third quarter of 2008, the interest payments allegedly stopped. <u>Id.</u> ¶ 199. When she contacted Pearson to find out what happened, Pearson told her that his investment "had gone bad." <u>Id.</u> ¶ 200. In July 2009, White and other investors participated in a conference call with an attorney who represented Pearson. <u>Id.</u> ¶ 201. The attorney told her that Pearson had attempted to pay the investors from other investment projects but all of Pearson's investments had heavy losses. <u>Id.</u> ¶ 202. However, Pearson allegedly had indicated that as of July 2009, his businesses were improving due to hard work and that Pearson would try to sell of his remaining assets to pay investors but that would require CRU investors to move their

4

1  Self-Directed IRAs out of Mid-South.  Id. ¶ 203.  The attorney
2  allegedly also told White that repayments would begin in July
3  2010.  Id. ¶ 204.
4       In 2009, Pearson allegedly also told White to move the
5  administration of her Entrust Self-Directed IRA from Mid-South to
6  another Entrust entity in Sacramento, California.  Id. ¶ 206.
7  White met with an employee of the Entrust entity in Sacramento
8  office and talked to this employee several times about her
9  worthless investment and the fact that her statements were still
10 showing a fair market value of $120,000 for her Self-Directed
11 IRA.  Id. ¶ 207.
12      White allegedly never received repayments, settlement
13 documents for execution, or quarterly reports from Pearson.  Id.
14 ¶ 208.  On September 2010, "fed up with the lack of assistance,"
15 White allegedly contacted Bromma.  Id. ¶ 209.  Bromma allegedly
16 told her that he had become suspicious of Langemeier in 2006, but
17 he allegedly did not offer White any assistance.  Id. ¶¶ 209-210.
18 In July 2011, White contacted the president of TEG to tell him
19 about her situation.  Id. ¶¶ 209-210.  In 2013, White allegedly
20 received a statement with conflicting information about her Self-
21 Directed IRA account.  Id. ¶ 218.
22      In addition, White alleges that "[f]rom 2008 until today,
23 [White] has never been notified by ENTRUST that her CRU
24 promissory note was in default or that it had expired."  Id.
25 ¶ 221.
26                         II.  OPINION
27      A.   Legal Standard
28      A party may move to dismiss an action for failure to state a

5

claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  To survive a motion to dismiss a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 556 U.S. 662, 570 (2007).  In considering a motion to dismiss, a district court must accept all the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972).  "First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must sufficiently allege underlying facts to give fair notice and enable the opposing party to defend itself effectively."  Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011), cert. denied, 132 S. Ct. 2101, 182 L. Ed. 2d 882 (U.S. 2012).  "Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."  Id.  Assertions that are mere "legal conclusions" are therefore not entitled to the presumption of truth.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555).  Dismissal is appropriate when a plaintiff fails to state a claim supportable by a cognizable legal theory.  Balistreri v. Pacifica Police Department, 901 F.2d 696, 699 (9th Cir. 1990).

    Upon granting a motion to dismiss for failure to state a claim, a court has discretion to allow leave to amend the

complaint pursuant to Federal Rule of Civil Procedure 15(a). "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment." Eminence Capital, L.L.C. v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003).

### B. Judicial Notice

Plaintiffs request judicial notice of an excerpt from a hearing by the U.S. Department of Labor Employee Benefits Security Administration and documents from the Internal Revenue Service. Pls.'Request for Judicial Notice, Doc. #22. These documents are appropriate for judicial notice because they are public records and are "not subject to reasonable dispute." Fed. R. Evid. 201(b).

Accordingly, the Court grants Plaintiffs' request for judicial notice.

### C. Discussion

The Entrust Defendants move to dismiss all the claims against them because the claims are time barred and because Plaintiffs have failed to allege sufficient facts.

#### 1. Statute of Limitations

Plaintiffs argue that none of the claims are time barred because they did not discover the wrongdoing until recently.

##### a. Fraud Claim

A fraud claim is subject to a three-year statute of limitations, but the claim does not accrue until "the discovery, by the aggrieved party, of the facts constituting fraud or mistake." Kline v. Turner, 87 Cal.App.4th 1369, 1373-74 (2001) (quoting Cal. Civ. Proc. Code § 338(d)). Discovery does not mean

1  when the plaintiff became aware of the specific wrong alleged,
2  but when the plaintiff suspected or should have suspected than an
3  injury was caused by wrongdoing.  Id.  "A plaintiff need not be
4  aware of the specific facts necessary to establish a claim since
5  they can be developed in pretrial discovery.  Wrong and
6  wrongdoing in this context are understood in their lay and not
7  legal senses."  Id.  The statute of limitations begins to run
8  when the plaintiff has information that would put a reasonable
9  person on inquiry.  Id.
10       This action was filed on March 11, 2013.  Therefore, if
11 Plaintiffs suspected or should have suspected that their injury
12 was caused by wrongdoing before March 11, 2010, then their fraud
13 claim is time barred.
14                      i.    White
15      The Entrust Defendants argue that by 2009, White should have
16 suspected wrongdoing because she knew that her investment had
17 gone bad, Pearson had retained an attorney, and Pearson was
18 paying investors from other investment projects.  Plaintiffs
19 argue that these allegations are insufficient because merely
20 knowing of an investment loss does not prove fraud or wrongdoing.
21 A plaintiff, however, need not be aware of the specific wrong
22 alleged.  In 2009, Pearson suggested to White she move the
23 administration of her Self-Directed IRA from Mid-South to another
24 Entrust entity in Sacramento, California.  FAC ¶ 206.  At this
25 location, she talked with an employee named "Lamar" several times
26 about her worthless investment and how her account still showed a
27 fair market value of $120,000.  Id. ¶ 207.  Therefore, by 2009,
28 White knew, or had information that put her on inquiry that her

8

1    investment had gone bad. White was aware that Pearson had
2    retained an attorney, there were vast inconsistencies in the
3    information she was receiving, and she was not receiving
4    assistance.  The Court finds that a reasonable person under these
5    circumstances would have questioned the incomplete and
6    inconsistent representations being made and should have suspected
7    by 2009 that her injury—her worthless investment—was caused by a
8    wrongdoing.  See Mendenhall v. JP Morgan Chase Bank, C-10-5302
9    MMC, 2011 WL 1557884 (N.D. Cal. Apr. 25, 2011) (granting motion
10   to dismiss because plaintiffs "had notice of circumstances that,
11   at a minimum, would put them on notice that something was amiss
12   with the loan, specifically, 'ambiguous, incomplete and
13   contradictory' loan documents, yet they did nothing for more than
14   three years thereafter. . .").  Therefore, the statute of
15   limitations began to run in 2009 and White's fraud claim is time
16   barred.

17        Plaintiffs argue that the statute of limitations did not
18   begin to run in 2009 because the Entrust Defendants induced
19   Plaintiffs by their representations not to act.  Opp. at 20-22.
20   Plaintiffs rely on two cases: Laraway v. First Nat. Bank of La
21   Verne, 39 Cal.App.2d 718 (1940), and Rutherford v. Rideout Bank,
22   11 Cal.2d 479(1938).  In Laraway, the defendants advised the
23   plaintiff that her losses due to buying low-grade securities
24   would be recouped if she continued to follow their advice.  39
25   Cal.App.2d at 728-30.  The court held that "there existed a
26   continuing confidential and fiduciary relationship between the
27   parties" and when "the delay in commencing action was induced by
28   the conduct of the offending party, it cannot be availed of by

9

the latter as a defense." Id.  In Rutherford, the court found that a confidential relationship existed between the plaintiff and the manager of a bank and because of that relationship, the plaintiff could not be charged with lack of diligence even though an inquiry would have disclosed the fraud.  11 Cal.2d at 486-87. Therefore, both cases are based on the existence of a fiduciary relationship.  In addition, courts have "recognized that in cases involving a fiduciary relationship[,] facts which would ordinarily require investigation may not incite suspicion, and that the same degree of diligence is not required."  Ramey v. Gen. Petroleum Corp., 173 Cal.App.2d 386, 400 (1959) (citing, among other cases, Rutherford, 11 Cal.2d 479).

Here, Plaintiffs argue that the parties relied on the Entrust Defendants for investment advice through their confidential relationship.  Opp. at 22.  However, Self-Directed IRA custodians, such as the Entrust Defendants, are not fiduciaries and their obligations are limited to the contract. See Brown v. California Pension Administrators & Consultants, Inc., 45 Cal.App.4th at 348 (holding that there was no cause of action for breach of fiduciary duty against an administrator of a self-directed IRA account; "[t]his was not an expansive fiduciary relationship giving rise to a duty to notify the customer of the risky nature of an investment, or . . . of the poor performance

///
///
///
///
///

of similar investments held by different customers").[2]  Moreover, Plaintiffs acknowledge that the Self-Directed IRA contracts "purportedly limit their liability to their customers for virtually any and all situations and even shifted some of the Custodian's responsibilities to their own clients." FAC ¶ 78. Therefore, the relaxed diligence standard applicable in cases where there is a fiduciary relationship, does not apply here.

Accordingly, the statute of limitations began to run in 2009 and White's fraud claim is time barred.

### ii. Moran

The Entrust Defendants argue that Moran should have suspected wrongdoing by July 2008, four years and nine months before this action was filed, because Moran had demanded repayment of his investment by then only to have Pearson refuse to speak with him.  Plaintiffs argue that Moran was not aware of the fraud because the Entrust Defendants continued to send statements showing that his account maintained its value.  By late 2008, however, Moran knew that his promissory note had matured, he had received far less interest than he was supposed to receive, and Pearson was providing no explanation or returning calls. Again, the Court finds that a reasonable prudent person would have suspected that Pearson's failure to pay and return

---

[2] In the reply, Defendants also cite Levine v. Entrust Grp., Inc., C 12-03959, 2013 WL 2606407, at *3-4 (N.D. Cal. June 11, 2013) for the proposition that Self-Directed IRA custodians have no fiduciary relationship with investors.  However, the Levine court held that the custodians of a Self-Directed IRA do not have the duty to perform a fair market evaluation of the account and did not, as Defendants' suggest, directly mention the absence of a fiduciary duty.  Id.

several calls was due to wrongdoing. <u>Kline</u>, 87 Cal.App.4th at 1374 (holding that where the plaintiff knew, more than three years before filing suit, that the defendant had not paid as promised, the plaintiff should have reasonably suspected that the defendant's excuse for nonpayment was something other than negligence). In addition, for the reasons mentioned above, the relaxed diligence standard does not apply. Therefore, the statute of limitations began to run in 2008 and Moran's fraud claim is time barred.

### b. Conversion Claim

The statute of limitations for conversion claims is three years. <u>See</u> Cal. Civ. Proc. § 338(c) and (d). The statute of limitations for conversion begins to run from the date of the conversion, however, where there has been fraudulent concealment of the conversion, the limitations period begins to run when the "the aggrieved party discovers or ought to have discovered the existence of the cause of action for conversion." <u>Strasberg v. Odyssey Group, Inc.</u>, 51 Cal.App.4th 906, 916 (1996) (citations omitted).

For the reasons set forth above, the Court finds that White should have discovered her conversion claim by 2009 and Moran should have discovered his conversion claim by 2008. Therefore, White's and Moran's conversion claims are time barred.

### c. RICO Claim

The statute of limitations for a civil RICO action is four years. <u>Agency Holding Corp. v. Malley–Duff & Associates, Inc.</u>, 483 U.S. 143, 156 (1987). This limitations period "begins to run when a plaintiff knows or should know of the injury which is the

12

1  basis for the action." Living Designs, Inc. v. E.I. Dupont de
2  Nemours & Co., 431 F.3d 353, 365 (9th Cir. 2005).  "The plaintiff
3  is deemed to have had constructive knowledge if it had enough
4  information to warrant an investigation which, if reasonably
5  diligent, would have led to discovery of the fraud." Id.
6  (quoting Pincay v. Andrews, 238 F.3d 1106, 1110 (9th Cir. 2001)).
7      Because civil RICO claims have a four-year statute of
8  limitations, Plaintiffs' claims would be barred if they had
9  enough information to warrant an investigation before March 11,
10 2009.  In this case, Moran had enough information to warrant an
11 investigation in 2008, before the four-year statute of
12 limitations.  Therefore, Moran's RICO claim is time barred.
13 White, contrastingly, did not have enough information until July
14 2009 when she spoke to the representative in the Sacramento
15 office, and therefore, White's RICO claim is not time barred.
16                    d.   Elder Abuse claim
17     Pursuant to California Welfare and Institutions Code Section
18 15657.7, a claim for financial abuse of an elder or dependent
19 adult "shall be commenced within four years after the plaintiff
20 discovers or, through the exercise of reasonable diligence,
21 should have discovered, the facts constituting the financial
22 abuse."  Cal. Welf. & Inst. Code § 15657.7.
23     Here, only White, who is 66 years old, pursues an elder
24 financial abuse claim.  FAC ¶ 264.  As with the RICO claim, based
25 on the FAC, White's claim is not time barred because White did
26 not discover, or could not have discovered, the facts
27 constituting elder abuse until at least July 2009.
28 ///

       e. Unfair Competition Law Claim

 The statute of limitations for UCL claims is set forth in California Business & Professions Code section 17208.  This section provides that "[a]ny action to enforce any cause of action [for unfair competition] shall be commenced within four years after the cause of action accrued."  Cal. Bus. & Prof. Code § 17208.  However, unlike the claims discussed above, the "discovery rule" does not apply to UCL claims.  <u>Stutz Motor Car of Am., Inc. v. Reebok Int'l, Ltd.</u>, 909 F. Supp. 1353, 1363 (C.D. Cal. 1995).

 Here, Plaintiffs allege, "[Pearson] had absconded with the investment monies within days or weeks after the SDIRA funds were wired to bank accounts [Pearson] controlled, and then diverted to other accounts."  FAC ¶ 23.  They also allege that White initially invested in July 2006 and Moran in October 2007.  <u>Id.</u> ¶¶ 46-47.  Because the discovery rule does not apply, the Court finds that Plaintiffs' UCL claims accrued in 2006 and 2007 respectively, and therefore, are time barred.

 Accordingly, the Court grants the Entrusts Defendants' motion to dismiss Plaintiffs' first cause of action for conversion, third cause of action for fraud, fifth cause action for violation of the UCL, and Moran's sixth cause of action for violation of the RICO Act.  Because these claims are legally foreclosed, the Court does not grant leave to amend.

    2. Failure to Allege Sufficient Facts

 The Entrust Defendants argue that Plaintiffs have failed to allege sufficient facts for all claims alleged against them.  The Court addresses, however, only White's RICO and elder abuse claim

14

because all other claims are time barred.

### a. RICO Claim

For a civil RICO claim, a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's 'business or property.'" Living Designs, Inc. v. E.I. Dupont de Nemours & Co., 431 F.3d 353, 361 (9th Cir. 2005)(citations omitted). "[T]o establish liability under [18 U.S.C.] § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." Id. (citation omitted). The term "enterprise" is defined in 18 U.S.C. § 1961(4) as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."

The Entrust Defendants argue that Plaintiffs have not identified an enterprise or two distinct entities to plead a claim under RICO. Plaintiffs disagree, arguing that the Defendants worked together and in concert with each other within the meaning of § 1961(4). Opp. at 17; FAC ¶ 288. In the FAC, however, Plaintiffs also allege that the same group of Defendants are persons within the meaning of 18 U.S.C. § 1961(3) and § 1962(c). FAC ¶ 289. Therefore, Plaintiffs have alleged that Defendants are both the enterprise and the person.

Accordingly, because Plaintiffs failed to allege two distinct entities, the RICO claim is not legally tenable and the Court dismisses this claim. The Court grants leave to amend, however, because White may be able to allege sufficient facts to

1  state a claim.  In addition, the Entrust Defendants argue that
2  Plaintiffs have failed to allege racketeering activity and fraud;
3  however, the Court need not address these arguments at this time.
4              b.   Elder Abuse Claim
5     To state a claim for financial elder abuse, plaintiffs must
6  allege that defendants took or assisted in taking "real or
7  personal property of an elder . . . for a wrongful use or with
8  intent to defraud, or both."  Cal. Welf. & Inst. Code
9  § 15610.30(a).
10    The Entrust Defendants argue that since White's claim for
11 relief under the Elder Abuse Act is grounded in fraud, it must be
12 plead with particularity, which Plaintiffs fail to do because
13 Plaintiffs do not identify the manner in which each defendant
14 purportedly violated the Elder Abuse Act.  Mot. at 23.
15 Plaintiffs do not address these arguments.  In the FAC,
16 Plaintiffs allege, "Defendants wrongfully took the monies and
17 properties" of White.  FAC ¶ 266.  They do not distinguish
18 between Defendants as required by Federal Rule of Civil Procedure
19 9(b).  See Levine v. Entrust Grp., Inc., C 12-03959, 2013 WL
20 2606407, at *5 (N.D. Cal. June 11, 2013) (noting that the Ninth
21 Circuit "has held that Rule 9(b) prevents plaintiffs from lumping
22 defendants together for the purposes of fraud
23 allegations")(citing Swartz v. KPMG LLP, 476 F.3d 756, 765 (9th
24 Cir. 2007)).
25    Accordingly, because White's conclusory allegations are
26 insufficient to support his elder abuse claim,  the Court
27 dismisses this claim.  Because White may be able to more
28 specifically identify the role of each defendant, the Court

16

grants White leave to amend.

### III. ORDER

For the reasons set forth above, the Court GRANTS WITH PREJUDICE the Entrust Defendants' Motion to Dismiss:

    (1) Plaintiffs' first cause of action for conversion;

    (2) Plaintiffs' third cause of action for fraud;

    (3) Plaintiffs' fifth cause of action for violation of UCL; and

    (4) Moran's sixth cause of action for violation of the RICO Act.

The Court DISMISSES WITH LEAVE TO AMEND:

    (1) Plaintiff White's fourth cause of action for violation of the Elder Abuse and Dependent Adult Civil Protection Act, and

    (2) Plaintiff White's sixth cause of action for violation of the RICO Act.

Plaintiff White shall file an Amended Complaint within twenty (20) days of the date of this Order. The Entrust Defendants shall file their responsive pleading within twenty (20)days after the Amended Complaint is filed.

IT IS SO ORDERED.

Dated: September 4, 2013

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE