1

2

3

4

5

6                    UNITED STATES DISTRICT COURT

7                   EASTERN DISTRICT OF CALIFORNIA

8

9   MARK MORAN and PATRICIA BAILEY WHITE,      No.  13-cv-00487 JAM-CKD
    individually and on behalf of a class
10  of similarly situated persons,

11            Plaintiffs,                       **ORDER GRANTING ENTRUST
                                                DEFENDANTS' MOTION TO
12       v.                                     DISMISS**

13  HUGH BROMMA, JAY PEARSON a/k/a JERRY
    PEARSON a/k/a JERRY O. PEARSON, JR.,
14  ENTRUST MID-SOUTH, LLC n/k/a/ MID
    SOUTH RETIREMENT SERVICES, LLC, THE
15  ENTRUST GROUP, INC., and ENTRUST
    ADMINISTRATION, INC.,
16
              Defendants.
17

18       This matter is before the Court on Defendants Hugh Bromma

19  ("Bromma"), The Entrust Group, INC. ("TEG"), and Entrust

20  Administration, INC.'s ("Entrust Admin") (collectively "Entrust

21  Defendants") Motion to Dismiss (Doc. #18) Plaintiffs' First

22  Amended Complaint ("FAC") (Doc. #16).  Plaintiffs Mark Moran

23  ("Moran") and Patricia Bailey White ("White") (collectively

24  "Plaintiffs") oppose the motion (Doc. #21) and Entrust Defendants

25  replied (Doc. #24).[1]  For the following reasons, Entrust

26

27  [1] This motion was determined to be suitable for decision without
    oral argument.  E.D. Cal. L.R. 230(g).  The hearing was scheduled
28  for August 7, 2013.

                                  1

1    Defendants' motion is GRANTED.

2

3            I.   FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

4        Plaintiffs filed this action on March 11, 2013, against the

5    Entrust Defendants, Entrust Mid-South, LLC ("Mid-South"), and

6    Jerry Pearson ("Pearson") (Doc. #1).  On May 21, 2013, Plaintiffs

7    filed a FAC, the operative complaint, alleging six causes of

8    actions: (1) conversion against all Defendants; (2) intentional

9    fraud against Pearson; (3) intentional fraud against all

10   Defendants; (4) violation of California's Elder Abuse and

11   Dependent Adult Civil Protection Act, Welfare and Institutions

12   Code § 15600 et seq., against all Defendants; (5) Unfair

13   Competition ("UCL") claim, Business and Professions Code § 17200

14   et seq., against all Defendants; and (6) civil Racketeer

15   Influenced and Corrupt Organizations ("RICO") claim, 18 U.S.C. §

16   1961 et seq., against all Defendants. FAC ¶¶ 240-301.

17       Plaintiffs allegedly invested in Self-Directed Individual

18   Retirement Accounts ("IRAs") administered by Entrust Defendants.

19   FAC ¶ 1.  A Self-Directed IRA is an IRA held by a trustee or

20   custodian that permits investment in a broader set of assets than

21   is permitted by most IRA custodians.  Id. ¶ 1 n.1.  Bromma was

22   allegedly the CEO of TEG and Entrust Admin.  Id. ¶ 2.  Mid-South

23   was allegedly a licensee of Entrust Admin and Pearson was a

24   principal of Mid-South.  Id. ¶¶ 3, 8.

25       A.   Plaintiff Mark Moran

26       On or about October 2007, Moran allegedly invested

27   approximately $34,000 through an Entrust Self-Directed IRA.  Id.

28   ¶ 46.

                                   2

1    After attending a Loral Langemeier's ("Langemeier")

2    investment seminar and hearing Pearson speak, Moran spoke to

3    Pearson about investing through an Entrust Self-Directed IRA and

4    suggested several companies for investment, particularly Out of

5    the Box Holdings, LLC ("Out of the Box").  Id. ¶¶ 158-159.

6    Pearson allegedly told Moran that he would take Moran's

7    investment money to invest in Out of the Box and pay Moran 12%

8    interest.  Id. ¶ 161.  An unsecured promissory note that matured

9    on July 15, 2008, would evidence the investment.  Id.  However,

10   the promissory note was not signed and had no date of repayment.

11   Id. ¶ 162.  Moran's money was wired to an account controlled by

12   Pearson in October 2007.  Id. ¶ 164.  Following the transfer, he

13   allegedly received several statements from the Entrust Defendants

14   indicating different values for his account.  Id. ¶ 166-167.

15   Moran allegedly received less than the 12% in interest he

16   was supposed to receive and he only received one payment in 2008,

17   even though his "account statements reflected that the promissory

18   note expired on July 15, 2008, meaning that money was due to be

19   returned at that time."  Id. ¶ 168.

20   Moran allegedly called Pearson repeatedly and told Pearson's

21   assistant that he wanted his money back when his promissory note

22   expired in July 2008, but Pearson never responded and Moran never

23   got his money back.  Id. ¶ 170.  In 2010, Moran called TEG to

24   have his money returned but a TEG representative told him that

25   was not possible.  Id. ¶ 181.  In 2011, Moran was allegedly told

26   that Pearson was no longer with Entrust.  Id. ¶ 183.  Finally,

27   his statement in 2012 allegedly showed that his account was

28   valued at $34,000.43.  Id. ¶ 185.

3

1          B.    Plaintiff Bailey White

2          On or about July 2006, White, who is 66 years old, allegedly

3     invested $120,000 through an Entrust Self-Directed IRA.  Id. ¶

4     46.

5          White's acquaintances were raising money to invest in

6     Langemeier and Pearson's company called Crumb R Us ("CRU").  Id.

7     ¶ 192.  White was told to transfer her retirement money to a Mid-

8     South Self-Directed IRA through Pearson to invest in CRU.  Id. ¶

9     193.  In July 2006, White opened a Self-Directed IRA and had

10    $146,631.04 wired to Mid-South out of which $120,000 was invested

11    with CRU and the balance was placed in an unrelated investment.

12    Id. ¶ 194.  In return, White received an unsecured promissory

13    note that accrued interest at a yearly rate of 12% and expired on

14    October 15, 2007.  Id. ¶ 195.  White allegedly received payments

15    on the note for 2006 and 2007 and she then decided to extend the

16    promissory note.  Id. ¶ 198.

17         In the third quarter of 2008, the interest payments

18    allegedly stopped.  Id. ¶ 199.  When she contacted Pearson to

19    find out what happened, Pearson told her that his investment "had

20    gone bad."  Id. ¶ 200.  In July 2009, White and other investors

21    participated in a conference call with an attorney who

22    represented Pearson.  Id. ¶ 201.  The attorney told her that

23    Pearson had attempted to pay the investors from other investment

24    projects but all of Pearson's investments had heavy losses.  Id.

25    ¶ 202.  However, Pearson allegedly had indicated that as of July

26    2009, his businesses were improving due to hard work and that

27    Pearson would try to sell of his remaining assets to pay

28    investors but that would require CRU investors to move their

4

1   Self-Directed IRAs out of Mid-South.  Id. ¶ 203.  The attorney
2   allegedly also told White that repayments would begin in July
3   2010.  Id. ¶ 204.

4       In 2009, Pearson allegedly also told White to move the
5   administration of her Entrust Self-Directed IRA from Mid-South to
6   another Entrust entity in Sacramento, California.  Id. ¶ 206.
7   White met with an employee of the Entrust entity in Sacramento
8   office and talked to this employee several times about her
9   worthless investment and the fact that her statements were still
10  showing a fair market value of $120,000 for her Self-Directed
11  IRA.  Id. ¶ 207.

12      White allegedly never received repayments, settlement
13  documents for execution, or quarterly reports from Pearson.  Id.
14  ¶ 208.  On September 2010, "fed up with the lack of assistance,"
15  White allegedly contacted Bromma.  Id. ¶ 209.  Bromma allegedly
16  told her that he had become suspicious of Langemeier in 2006, but
17  he allegedly did not offer White any assistance.  Id. ¶¶ 209-210.
18  In July 2011, White contacted the president of TEG to tell him
19  about her situation.  Id. ¶¶ 209-210.  In 2013, White allegedly
20  received a statement with conflicting information about her Self-
21  Directed IRA account.  Id. ¶ 218.

22      In addition, White alleges that "[f]rom 2008 until today,
23  [White] has never been notified by ENTRUST that her CRU
24  promissory note was in default or that it had expired."  Id.
25  ¶ 221.

26              II.  OPINION
27      A.   Legal Standard
28      A party may move to dismiss an action for failure to state a

1 claim upon which relief can be granted pursuant to Federal Rule

2 of Civil Procedure 12(b)(6).  To survive a motion to dismiss a

3 plaintiff must plead "enough facts to state a claim to relief

4 that is plausible on its face."  Bell Atlantic Corp. v. Twombly,

5 556 U.S. 662, 570 (2007).  In considering a motion to dismiss, a

6 district court must accept all the allegations in the complaint

7 as true and draw all reasonable inferences in favor of the

8 plaintiff.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974),

9 overruled on other grounds by Davis v. Scherer, 468 U.S. 183

10 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972).  "First, to be

11 entitled to the presumption of truth, allegations in a complaint

12 or counterclaim may not simply recite the elements of a cause of

13 action, but must sufficiently allege underlying facts to give

14 fair notice and enable the opposing party to defend itself

15 effectively."  Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir.

16 2011), cert. denied, 132 S. Ct. 2101, 182 L. Ed. 2d 882 (U.S.

17 2012).  "Second, the factual allegations that are taken as true

18 must plausibly suggest an entitlement to relief, such that it is

19 not unfair to require the opposing party to be subjected to the

20 expense of discovery and continued litigation."  Id.  Assertions

21 that are mere "legal conclusions" are therefore not entitled to

22 the presumption of truth.  Ashcroft v. Iqbal, 556 U.S. 662, 678

23 (2009) (citing Twombly, 550 U.S. at 555).  Dismissal is

24 appropriate when a plaintiff fails to state a claim supportable

25 by a cognizable legal theory.  Balistreri v. Pacifica Police

26 Department, 901 F.2d 696, 699 (9th Cir. 1990).

27     Upon granting a motion to dismiss for failure to state a

28 claim, a court has discretion to allow leave to amend the

1    complaint pursuant to Federal Rule of Civil Procedure 15(a).

2    "Dismissal with prejudice and without leave to amend is not

3    appropriate unless it is clear . . . that the complaint could not

4    be saved by amendment."  Eminence Capital, L.L.C. v. Aspeon,

5    Inc., 316 F.3d 1048, 1052 (9th Cir. 2003).

6         B.   Judicial Notice

7         Plaintiffs request judicial notice of an excerpt from a

8    hearing by the U.S. Department of Labor Employee Benefits

9    Security Administration and documents from the Internal Revenue

10   Service.  Pls.'Request for Judicial Notice, Doc. #22.  These

11   documents are appropriate for judicial notice because they are

12   public records and are "not subject to reasonable dispute."  Fed.

13   R. Evid. 201(b).

14        Accordingly, the Court grants Plaintiffs' request for

15   judicial notice.

16        C.   Discussion

17        The Entrust Defendants move to dismiss all the claims

18   against them because the claims are time barred and because

19   Plaintiffs have failed to allege sufficient facts.

20             1.   Statute of Limitations

21        Plaintiffs argue that none of the claims are time barred

22   because they did not discover the wrongdoing until recently.

23             a.   Fraud Claim

24        A fraud claim is subject to a three-year statute of

25   limitations, but the claim does not accrue until "the discovery,

26   by the aggrieved party, of the facts constituting fraud or

27   mistake."  Kline v. Turner, 87 Cal.App.4th 1369, 1373-74 (2001)

28   (quoting Cal. Civ. Proc. Code § 338(d)).  Discovery does not mean

1   when the plaintiff became aware of the specific wrong alleged,

2   but when the plaintiff suspected or should have suspected than an

3   injury was caused by wrongdoing.  Id.  "A plaintiff need not be

4   aware of the specific facts necessary to establish a claim since

5   they can be developed in pretrial discovery.  Wrong and

6   wrongdoing in this context are understood in their lay and not

7   legal senses."  Id.  The statute of limitations begins to run

8   when the plaintiff has information that would put a reasonable

9   person on inquiry.  Id.

10      This action was filed on March 11, 2013.  Therefore, if

11  Plaintiffs suspected or should have suspected that their injury

12  was caused by wrongdoing before March 11, 2010, then their fraud

13  claim is time barred.

14                          i.    White

15      The Entrust Defendants argue that by 2009, White should have

16  suspected wrongdoing because she knew that her investment had

17  gone bad, Pearson had retained an attorney, and Pearson was

18  paying investors from other investment projects.  Plaintiffs

19  argue that these allegations are insufficient because merely

20  knowing of an investment loss does not prove fraud or wrongdoing.

21  A plaintiff, however, need not be aware of the specific wrong

22  alleged.  In 2009, Pearson suggested to White she move the

23  administration of her Self-Directed IRA from Mid-South to another

24  Entrust entity in Sacramento, California.  FAC ¶ 206.  At this

25  location, she talked with an employee named "Lamar" several times

26  about her worthless investment and how her account still showed a

27  fair market value of $120,000.  Id. ¶ 207.  Therefore, by 2009,

28  White knew, or had information that put her on inquiry that her

investment had gone bad. White was aware that Pearson had
retained an attorney, there were vast inconsistencies in the
information she was receiving, and she was not receiving
assistance.  The Court finds that a reasonable person under these
circumstances would have questioned the incomplete and
inconsistent representations being made and should have suspected
by 2009 that her injury—her worthless investment—was caused by a
wrongdoing.  See Mendenhall v. JP Morgan Chase Bank, C-10-5302
MMC, 2011 WL 1557884 (N.D. Cal. Apr. 25, 2011) (granting motion
to dismiss because plaintiffs "had notice of circumstances that,
at a minimum, would put them on notice that something was amiss
with the loan, specifically, 'ambiguous, incomplete and
contradictory' loan documents, yet they did nothing for more than
three years thereafter. . .").  Therefore, the statute of
limitations began to run in 2009 and White's fraud claim is time
barred.

      Plaintiffs argue that the statute of limitations did not
begin to run in 2009 because the Entrust Defendants induced
Plaintiffs by their representations not to act.  Opp. at 20-22.
Plaintiffs rely on two cases: Laraway v. First Nat. Bank of La
Verne, 39 Cal.App.2d 718 (1940), and Rutherford v. Rideout Bank,
11 Cal.2d 479(1938).  In Laraway, the defendants advised the
plaintiff that her losses due to buying low-grade securities
would be recouped if she continued to follow their advice.  39
Cal.App.2d at 728-30.  The court held that "there existed a
continuing confidential and fiduciary relationship between the
parties" and when "the delay in commencing action was induced by
the conduct of the offending party, it cannot be availed of by

1    the latter as a defense." <u>Id.</u>   In <u>Rutherford</u>, the court found

2    that a confidential relationship existed between the plaintiff

3    and the manager of a bank and because of that relationship, the

4    plaintiff could not be charged with lack of diligence even though

5    an inquiry would have disclosed the fraud.   11 Cal.2d at 486-87.

6    Therefore, both cases are based on the existence of a fiduciary

7    relationship.   In addition, courts have "recognized that in cases

8    involving a fiduciary relationship[,] facts which would

9    ordinarily require investigation may not incite suspicion, and

10   that the same degree of diligence is not required." <u>Ramey v.</u>

11   <u>Gen. Petroleum Corp.</u>, 173 Cal.App.2d 386, 400 (1959) (citing,

12   among other cases, <u>Rutherford</u>, 11 Cal.2d 479).

13        Here, Plaintiffs argue that the parties relied on the

14   Entrust Defendants for investment advice through their

15   confidential relationship.   Opp. at 22.   However, Self-Directed

16   IRA custodians, such as the Entrust Defendants, are not

17   fiduciaries and their obligations are limited to the contract.

18   <u>See</u> <u>Brown v. California Pension Administrators & Consultants,</u>

19   <u>Inc.</u>, 45 Cal.App.4th at 348 (holding that there was no cause of

20   action for breach of fiduciary duty against an administrator of a

21   self-directed IRA account; "[t]his was not an expansive fiduciary

22   relationship giving rise to a duty to notify the customer of the

23   risky nature of an investment, or . . . of the poor performance

24   ///

25   ///

26   ///

27   ///

28   ///

1    of similar investments held by different customers").[2]   Moreover,

2    Plaintiffs acknowledge that the Self-Directed IRA contracts

3    "purportedly limit their liability to their customers for

4    virtually any and all situations and even shifted some of the

5    Custodian's responsibilities to their own clients."   FAC ¶ 78.

6    Therefore, the relaxed diligence standard applicable in cases

7    where there is a fiduciary relationship, does not apply here.

8         Accordingly, the statute of limitations began to run in 2009

9    and White's fraud claim is time barred.

10                   ii.    <u>Moran</u>

11        The Entrust Defendants argue that Moran should have

12   suspected wrongdoing by July 2008, four years and nine months

13   before this action was filed, because Moran had demanded

14   repayment of his investment by then only to have Pearson refuse

15   to speak with him.   Plaintiffs argue that Moran was not aware of

16   the fraud because the Entrust Defendants continued to send

17   statements showing that his account maintained its value.   By

18   late 2008, however, Moran knew that his promissory note had

19   matured, he had received far less interest than he was supposed

20   to receive, and Pearson was providing no explanation or returning

21   calls. Again, the Court finds that a reasonable prudent person

22   would have suspected that Pearson's failure to pay and return

23

24   [2] In the reply, Defendants also cite <u>Levine v. Entrust Grp.,</u>
     <u>Inc.</u>, C 12-03959, 2013 WL 2606407, at *3-4 (N.D. Cal. June 11,
25   2013) for the proposition that Self-Directed IRA custodians have
     no fiduciary relationship with investors.   However, the <u>Levine</u>
26   court held that the custodians of a Self-Directed IRA do not have
     the duty to perform a fair market evaluation of the account and
27   did not, as Defendants' suggest, directly mention the absence of
     a fiduciary duty.   <u>Id.</u>
28

1   several calls was due to wrongdoing.  Kline, 87 Cal.App.4th at

2   1374 (holding that where the plaintiff knew, more than three

3   years before filing suit, that the defendant had not paid as

4   promised, the plaintiff should have reasonably suspected that the

5   defendant's excuse for nonpayment was something other than

6   negligence).  In addition, for the reasons mentioned above, the

7   relaxed diligence standard does not apply.  Therefore, the

8   statute of limitations began to run in 2008 and Moran's fraud

9   claim is time barred.

10                    b.    Conversion Claim

11       The statute of limitations for conversion claims is three

12   years.  See Cal. Civ. Proc. § 338(c) and (d).  The statute of

13   limitations for conversion begins to run from the date of the

14   conversion, however, where there has been fraudulent concealment

15   of the conversion, the limitations period begins to run when the

16   "the aggrieved party discovers or ought to have discovered the

17   existence of the cause of action for conversion."  Strasberg v.

18   Odyssey Group, Inc., 51 Cal.App.4th 906, 916 (1996) (citations

19   omitted).

20       For the reasons set forth above, the Court finds that White

21   should have discovered her conversion claim by 2009 and Moran

22   should have discovered his conversion claim by 2008.  Therefore,

23   White's and Moran's conversion claims are time barred.

24                    c.    RICO Claim

25       The statute of limitations for a civil RICO action is four

26   years.  Agency Holding Corp. v. Malley-Duff & Associates, Inc.,

27   483 U.S. 143, 156 (1987).  This limitations period "begins to run

28   when a plaintiff knows or should know of the injury which is the

12

1  basis for the action." <u>Living Designs, Inc. v. E.I. Dupont de</u>

2  <u>Nemours & Co.</u>, 431 F.3d 353, 365 (9th Cir. 2005).  "The plaintiff

3  is deemed to have had constructive knowledge if it had enough

4  information to warrant an investigation which, if reasonably

5  diligent, would have led to discovery of the fraud."  <u>Id.</u>

6  (quoting <u>Pincay v. Andrews</u>, 238 F.3d 1106, 1110 (9th Cir. 2001)).

7      Because civil RICO claims have a four-year statute of

8  limitations, Plaintiffs' claims would be barred if they had

9  enough information to warrant an investigation before March 11,

10  2009.  In this case, Moran had enough information to warrant an

11  investigation in 2008, before the four-year statute of

12  limitations.  Therefore, Moran's RICO claim is time barred.

13  White, contrastingly, did not have enough information until July

14  2009 when she spoke to the representative in the Sacramento

15  office, and therefore, White's RICO claim is not time barred.

16                d.   Elder Abuse claim

17      Pursuant to California Welfare and Institutions Code Section

18  15657.7, a claim for financial abuse of an elder or dependent

19  adult "shall be commenced within four years after the plaintiff

20  discovers or, through the exercise of reasonable diligence,

21  should have discovered, the facts constituting the financial

22  abuse."  Cal. Welf. & Inst. Code § 15657.7.

23      Here, only White, who is 66 years old, pursues an elder

24  financial abuse claim.  FAC ¶ 264.  As with the RICO claim, based

25  on the FAC, White's claim is not time barred because White did

26  not discover, or could not have discovered, the facts

27  constituting elder abuse until at least July 2009.

28  ///

1                      e.    Unfair Competition Law Claim

2          The statute of limitations for UCL claims is set forth in

3   California Business & Professions Code section 17208.  This

4   section provides that "[a]ny action to enforce any cause of

5   action [for unfair competition] shall be commenced within four

6   years after the cause of action accrued."  Cal. Bus. & Prof. Code

7   § 17208.  However, unlike the claims discussed above, the

8   "discovery rule" does not apply to UCL claims.  Stutz Motor Car

9   of Am., Inc. v. Reebok Int'l, Ltd., 909 F. Supp. 1353, 1363 (C.D.

10  Cal. 1995).

11         Here, Plaintiffs allege, "[Pearson] had absconded with the

12  investment monies within days or weeks after the SDIRA funds were

13  wired to bank accounts [Pearson] controlled, and then diverted to

14  other accounts."  FAC ¶ 23.  They also allege that White

15  initially invested in July 2006 and Moran in October 2007.  Id.

16  ¶¶ 46-47.  Because the discovery rule does not apply, the Court

17  finds that Plaintiffs' UCL claims accrued in 2006 and 2007

18  respectively, and therefore, are time barred.

19         Accordingly, the Court grants the Entrusts Defendants'

20  motion to dismiss Plaintiffs' first cause of action for

21  conversion, third cause of action for fraud, fifth cause action

22  for violation of the UCL, and Moran's sixth cause of action for

23  violation of the RICO Act.  Because these claims are legally

24  foreclosed, the Court does not grant leave to amend.

25                  2.    Failure to Allege Sufficient Facts

26         The Entrust Defendants argue that Plaintiffs have failed to

27  allege sufficient facts for all claims alleged against them.  The

28  Court addresses, however, only White's RICO and elder abuse claim

                                   14

1    because all other claims are time barred.

2                    a.   RICO Claim

3         For a civil RICO claim, a plaintiff must allege "(1) conduct

4    (2) of an enterprise (3) through a pattern (4) of racketeering

5    activity (known as 'predicate acts') (5) causing injury to

6    plaintiff's 'business or property." Living Designs, Inc. v. E.I.

7    Dupont de Nemours & Co., 431 F.3d 353, 361 (9th Cir.

8    2005)(citations omitted).  "[T]o establish liability under [18

9    U.S.C.] § 1962(c) one must allege and prove the existence of two

10   distinct entities: (1) a 'person'; and (2) an 'enterprise' that

11   is not simply the same 'person' referred to by a different name."

12   Id. (citation omitted).  The term "enterprise" is defined in 18

13   U.S.C. § 1961(4) as "any individual, partnership, corporation,

14   association, or other legal entity, and any union or group of

15   individuals associated in fact although not a legal entity."

16        The Entrust Defendants argue that Plaintiffs have not

17   identified an enterprise or two distinct entities to plead a

18   claim under RICO.  Plaintiffs disagree, arguing that the

19   Defendants worked together and in concert with each other within

20   the meaning of § 1961(4).  Opp. at 17; FAC ¶ 288.  In the FAC,

21   however, Plaintiffs also allege that the same group of Defendants

22   are persons within the meaning of 18 U.S.C. § 1961(3) and §

23   1962(c).  FAC ¶ 289.  Therefore, Plaintiffs have alleged that

24   Defendants are both the enterprise and the person.

25        Accordingly, because Plaintiffs failed to allege two

26   distinct entities, the RICO claim is not legally tenable and the

27   Court dismisses this claim.  The Court grants leave to amend,

28   however, because White may be able to allege sufficient facts to

                                    15

1  state a claim.  In addition, the Entrust Defendants argue that

2  Plaintiffs have failed to allege racketeering activity and fraud;

3  however, the Court need not address these arguments at this time.

4                    b.    Elder Abuse Claim

5       To state a claim for financial elder abuse, plaintiffs must

6  allege that defendants took or assisted in taking "real or

7  personal property of an elder . . . for a wrongful use or with

8  intent to defraud, or both."  Cal. Welf. & Inst. Code

9  § 15610.30(a).

10      The Entrust Defendants argue that since White's claim for

11  relief under the Elder Abuse Act is grounded in fraud, it must be

12  plead with particularity, which Plaintiffs fail to do because

13  Plaintiffs do not identify the manner in which each defendant

14  purportedly violated the Elder Abuse Act.  Mot. at 23.

15  Plaintiffs do not address these arguments.  In the FAC,

16  Plaintiffs allege, "Defendants wrongfully took the monies and

17  properties" of White.  FAC ¶ 266.  They do not distinguish

18  between Defendants as required by Federal Rule of Civil Procedure

19  9(b).  See Levine v. Entrust Grp., Inc., C 12-03959, 2013 WL

20  2606407, at *5 (N.D. Cal. June 11, 2013) (noting that the Ninth

21  Circuit "has held that Rule 9(b) prevents plaintiffs from lumping

22  defendants together for the purposes of fraud

23  allegations")(citing Swartz v. KPMG LLP, 476 F.3d 756, 765 (9th

24  Cir. 2007)).

25      Accordingly, because White's conclusory allegations are

26  insufficient to support his elder abuse claim,  the Court

27  dismisses this claim.  Because White may be able to more

28  specifically identify the role of each defendant, the Court

                                16

1   grants White leave to amend.

2

3                           III. ORDER

4        For the reasons set forth above, the Court GRANTS WITH

5   PREJUDICE the Entrust Defendants' Motion to Dismiss:

6        (1)  Plaintiffs' first cause of action for conversion;

7        (2)  Plaintiffs' third cause of action for fraud;

8        (3)  Plaintiffs' fifth cause of action for violation of UCL;

9   and

10       (4)  Moran's sixth cause of action for violation of the RICO

11  Act.

12       The Court DISMISSES WITH LEAVE TO AMEND:

13       (1)  Plaintiff White's fourth cause of action for violation

14  of the Elder Abuse and Dependent Adult Civil Protection Act, and

15       (2)  Plaintiff White's sixth cause of action for violation

16  of the RICO Act.

17       Plaintiff White shall file an Amended Complaint within

18   twenty (20) days of the date of this Order.  The Entrust

19   Defendants shall file their responsive pleading within twenty

20   (20)days after the Amended Complaint is filed.

21       IT IS SO ORDERED.

22  Dated: September 4, 2013

23                             _____
                               JOHN A. MENDEZ,
                               UNITED STATES DISTRICT JUDGE

24

25

26

27

28