UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK MORAN and PATRICIA BAILEY WHITE, individually and on behalf of a class of similarly situated persons,<br><br>    Plaintiffs,<br><br>    v.<br><br>HUGH BROMMA, JAY PEARSON a/k/a JERRY PEARSON a/k/a JERRY O. PEARSON, JR., ENTRUST MID-SOUTH, LLC n/k/a/ MID SOUTH RETIREMENT SERVICES, LLC, THE ENTRUST GROUP, INC., and ENTRUST ADMINISTRATION, INC.,<br><br>    Defendants. | No. 13-cv-00487 JAM-CKD<br><br>**ORDER GRANTING ENTRUST DEFENDANTS' MOTION TO DISMISS** |

This matter is before the Court on Defendants Hugh Bromma ("Bromma"), The Entrust Group, INC. ("TEG"), and Entrust Administration, INC.'s ("Entrust Admin") (collectively "Entrust Defendants") Motion to Dismiss (Doc. #38) Plaintiff's Second Amended Complaint ("SAC") (Doc. #33). Plaintiff Patricia Bailey White ("Plaintiff") opposes the motion (Doc. #39) and Entrust Defendants replied (Doc. #41).[1] For the following reasons,

---

[1] This motion was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g). The hearing was scheduled for January 22, 2014.

1

Entrust Defendants' motion is GRANTED.

I. FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

Plaintiff and Mark Moran ("Moran") filed this action on March 11, 2013, against the Entrust Defendants, Entrust Mid-South, LLC ("Mid-South"), and Jerry Pearson ("Pearson") (Doc. #1). On May 21, 2013, Plaintiff and Moran filed a FAC, alleging six causes of actions: (1) conversion against all Defendants; (2) intentional fraud against Pearson; (3) intentional fraud against all Defendants; (4) violation of California's Elder Abuse and Dependent Adult Civil Protection Act ("Elder Abuse claim"), Welfare and Institutions Code § 15600 et seq., against all Defendants; (5) Unfair Competition ("UCL") claim, Business and Professions Code § 17200 et seq., against all Defendants; and (6) civil Racketeer Influenced and Corrupt Organizations ("RICO") claim, 18 U.S.C. § 1961 et seq., against all Defendants. FAC ¶¶ 240-301. The Entrust Defendants moved to dismiss all the claims against them. On September 5, 2013, the Court granted the Entrust Defendants' motion, finding that all of Moran's claims were time barred under the applicable statute of limitations and finding that Plaintiff's intentional fraud claim and UCL claim were time barred. Order Granting the Entrust Defendant's Motion to Dismiss ("Order"), Doc. #27, at 17. The Court also dismissed Plaintiff's Elder Abuse claim and RICO claim with leave to amend for failure to allege sufficient facts. Id. On October 11, 2013, Plaintiff filed her SAC, alleging an Elder Abuse claim and a RICO claim against all Defendants.

///

According to the SAC, Plaintiff allegedly invested in Self-Directed Individual Retirement Accounts ("IRAs") administered by Entrust Defendants. SAC ¶ 1. A Self-Directed IRA is an IRA held by a trustee or custodian that permits investment in a broader set of assets than is permitted by most IRA custodians. Id. ¶ 1 n.1. Bromma was allegedly the CEO of TEG and Entrust Admin. Id. ¶ 2. Mid-South was allegedly a licensee of Entrust Admin and Pearson was a principal of Mid-South. Id. ¶¶ 3, 8.

On or about July 2006, Plaintiff, who is 66 years old, allegedly invested $120,000 through an Entrust Self-Directed IRA. Id. ¶ 46. Plaintiff's acquaintances were raising money to invest in Loral Langemeier and Pearson's company called Crumb R Us ("CRU"). Id. ¶ 154. Plaintiff was told to transfer her retirement money to a Mid-South Self-Directed IRA through Pearson to invest in CRU. Id. ¶ 155. In July 2006, Plaintiff opened a Self-Directed IRA and had $146,631.04 wired to Mid-South out of which $120,000 was invested with CRU and the balance was placed in an unrelated investment. Id. ¶ 156. In return, she received an unsecured promissory note that accrued interest at a yearly rate of 12% and expired on October 15, 2007. Id. ¶ 157. Plaintiff allegedly received payments on the note for 2006 and 2007 and she then decided to extend the promissory note. Id. ¶ 158.

In the third quarter of 2008, the interest payments allegedly stopped. Id. ¶ 161. When she contacted Pearson to find out what happened, Pearson told her that his investment "had gone bad." Id. ¶ 162. In July 2009, Plaintiff and other investors participated in a conference call with an attorney who

3

represented Pearson. Id. ¶ 163. The attorney told her that Pearson had attempted to pay the investors from other investment projects but all of Pearson's investments had heavy losses. Id. ¶ 164. However, Pearson allegedly had indicated that as of July 2009, his businesses were improving due to hard work and that Pearson would try to sell off his remaining assets to pay investors but that would require CRU investors to move their Self-Directed IRAs out of Mid-South. Id. ¶ 165. The attorney allegedly also told Plaintiff that repayments would begin in July 2010. Id. ¶ 166.

In 2009, Pearson allegedly also told Plaintiff to move the administration of her Entrust Self-Directed IRA from Mid-South to another Entrust entity in Sacramento, California. Id. ¶ 168. White met with an employee of the Entrust entity in Sacramento office and talked to this employee several times about her worthless investment and the fact that her statements were still showing a fair market value of $120,000 for her Self-Directed IRA. Id. ¶ 169.

Plaintiff allegedly never received repayments, settlement documents for execution, or quarterly reports from Pearson. Id. ¶ 170. In September 2010, "fed up with the lack of assistance," White allegedly contacted Bromma. Id. ¶ 171. Bromma allegedly told her that he had become suspicious of Langemeier in 2006, but he allegedly did not offer her any assistance. Id. ¶¶ 172-73. In July 2011, White contacted the president of TEG to tell him about her situation. Id. ¶¶ 178. In 2013, White allegedly received a statement with conflicting information about her Self-Directed IRA account. Id. ¶ 180.

1  ///

2  In addition, Plaintiff alleges that "[f]rom 2008 until today, [White] has never been notified by ENTRUST that her CRU promissory note was in default or that it had expired." Id. ¶ 183.

## II. OPINION

### A. Legal Standard

A party may move to dismiss an action for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). To survive a motion to dismiss a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 556 U.S. 662, 570 (2007). In considering a motion to dismiss, a district court must accept all the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972). "First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must sufficiently allege underlying facts to give fair notice and enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011), cert. denied, 132 S. Ct. 2101, 182 L. Ed. 2d 882 (U.S. 2012). "Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the

5

1  expense of discovery and continued litigation." Id.  Assertions
2  that are mere "legal conclusions" are therefore not entitled to
3  the presumption of truth.  Ashcroft v. Iqbal, 556 U.S. 662, 678
4  (2009) (citing Twombly, 550 U.S. at 555).  Dismissal is
5  appropriate when a plaintiff fails to state a claim supportable
6  by a cognizable legal theory.  Balistreri v. Pacifica Police
7  Department, 901 F.2d 696, 699 (9th Cir. 1990).
8      Upon granting a motion to dismiss for failure to state a
9  claim, a court has discretion to allow leave to amend the
10 complaint pursuant to Federal Rule of Civil Procedure 15(a).
11 "Dismissal with prejudice and without leave to amend is not
12 appropriate unless it is clear . . . that the complaint could not
13 be saved by amendment."  Eminence Capital, L.L.C. v. Aspeon,
14 Inc., 316 F.3d 1048, 1052 (9th Cir. 2003).
15     B.   Discussion
16     The Entrust Defendants move to dismiss Plaintiff's remaining
17 RICO and Elder Abuse claim alleged against them.
18         1.   RICO Claim
19     The Entrust Defendants primarily assert that Plaintiff's
20 RICO claim fails because she does not allege the existence of an
21 enterprise that is distinct from Defendants themselves because
22 subsidiaries and affiliates of a corporation generally do not
23 constitute an enterprise.  Plaintiff argues that she has alleged
24 sufficient facts because an associated-in-fact enterprise does
25 not require any particular organizational structure, separate or
26 otherwise, under the Ninth Circuit's holding in Odom v. Microsoft
27 Corp., 486 F.3d 541 (9th Cir. 2007) (en banc).
28     Under 18 U.S.C. § 1962(c), "[i]t shall be unlawful for any

6

1 | person employed by or associated with any enterprise engaged in,
2 | or the activities of which affect, interstate or foreign
3 | commerce, to conduct or participate, directly or indirectly, in
4 | the conduct of such enterprise's affairs through a pattern of
5 | racketeering activity or collection of unlawful debt."  To a
6 | state a claim, a plaintiff must allege: "(1) conduct (2) of an
7 | enterprise (3) through a pattern (4) of racketeering activity."
8 | Odom, 486 F.3d at 547.  In Odom, the Ninth Circuit held that "an
9 | associated-in-fact enterprise under RICO does not require any
10 | particular organizational structure, separate or otherwise."  486
11 | F.3d 541, 551 (9th Cir. 2007) (no requirement of an
12 | "ascertainable structure").  "[A]n associated-in-fact enterprise
13 | is 'a group of persons associated together for a common purpose
14 | of engaging in a course of conduct.'"  Id. at 552 (quoting United
15 | States v. Turkette, 452 U.S. 576, 583 (1981)).  Therefore, to
16 | establish an associated-in-fact enterprise, a plaintiff must
17 | allege (i) a common purpose of engaging in a course of conduct;
18 | (ii) evidence of an "ongoing organization, formal or informal";
19 | and (iii) evidence that the various associates function as a
20 | continuing unit.  Id. (citing Turkette, 452 U.S. at 583).
21 |     Originally, in the FAC, Plaintiff alleged broadly that all
22 | Defendants were the persons and the enterprise with no
23 | explanation and therefore, the Court dismissed Plaintiff's claim
24 | with leave to amend.  Order at 15-16.  In the SAC, Plaintiff now
25 | alleges, "On their face, the Defendants existed independently as
26 | a separate legal person or entity, in order to conduct various
27 | types of businesses and/or transactions," and "Defendants banded
28 | together in a hierarchical structure for spurts of activity

7

1  involving the illegal acts and fraud set forth herein that
2  injured Plaintiff and the Class Members.  The enterprise included
3  multiple corporate entities associating with multiple
4  individuals."  SAC ¶ 244.  The Entrust Defendants argue that
5  these allegations are vague.  Although Plaintiff uses the vague
6  terms "multiple corporate entities" and "multiple individuals,"
7  in the opposition, Plaintiff clarifies that each Defendant is a
8  person and together they are an associated-in-fact enterprise.
9  See River City Markets, Inc. v. Fleming Foods W., Inc., 960 F.2d
10 1458, 1462 (9th Cir. 1992) (holding "a plaintiff is free to name
11 all members of an association-in-fact enterprise as individual
12 defendants").

13     The Entrust Defendants argue that even if Plaintiff's
14 allegations are not vague, the combination of the individual
15 defendants does not create a new entity because the associated-
16 in-fact enterprise "consists of nothing more than a parent, its
17 subsidiary, its CEO and its licensee/franchisee," which is
18 insufficient.  Mot. at 18-19.  Specifically, Plaintiff alleges
19 that Entrust Admin is a wholly owned subsidiary of TEG, Entrust
20 Mid-South was a licensee of TEG, Bromma was the CEO of TEG and
21 Entrust Admin, and Pearson was the CEO and owner of Mid-South.
22 SAC ¶¶ 7-10.  Therefore, Plaintiff has identified an associated-
23 in-fact enterprise consisting of a corporate defendant, its
24 affiliates, and two of its officers.  Plaintiff argues that the
25 Entrust Corporate defendants, by themselves, satisfy the
26 requirement of pleading at least two distinct entities, citing
27 Cedric Kushner Promotions, Ltd., v. King, 533 U.S. 158 (2001).
28 Opp. at 15-16.  However, as Defendants argue, in Cedric Kushner

8

Promotions, the defendant owner/employee was not alleged to be a part of the RICO enterprise and the corporation was not alleged to be the RICO person.  Here, all Defendants are part of the same corporate family and consequently, the distinctiveness requirement is not satisfied.  See Ice Cream Distrib. of Evansville, LLC v. Dreyer's Grand Ice Cream, Inc., No. 09-5815 CW, 2010 WL 3619884 (N.D. Cal. Sep.10, 2010) ("[A] § 1962(c) claim could not be based on a RICO enterprise comprised of a corporation, a wholly-owned subsidiary and an employee of that corporate family if these entities were also plead as the RICO persons.")  Therefore, even though under Odom several corporations may constitute an associated-in-fact enterprise, the enterprise must still be distinct from the person, which Plaintiff has not properly alleged in this case.

Accordingly, the Court dismisses Plaintiff's RICO claim. Because Plaintiff has not indicated any other facts that she may be able to allege to pursue this cause of action, and she has had two opportunities to properly plead this claim, further amendment is futile.  In addition, the Court need not address the Entrust Defendants' arguments that Plaintiff has failed to allege any predicate acts, causation, or fraud.

        2.    Elder Abuse Claim

The Entrust Defendants move to dismiss Plaintiff's Elder Abuse claim because the Elder Abuse Act does not create an independent cause of action and even if there was an elder abuse cause of action, Plaintiff has not alleged sufficient facts. Plaintiff asserts that the Elder Abuse Act creates an independent cause of action but provides no authority.  Opp. at 21.  However,

the Court need not address this argument for the reasons mentioned below.

The Court previously dismissed Plaintiff's Elder Abuse claim because she failed to distinguish between Defendants as required by Federal Rule of Civil Procedure 9(b) since her claim is based on fraud. Order at 16 (citing Levine v. Entrust Grp., Inc., C 12-03959, 2013 WL 2606407, at *5 (N.D. Cal. June 11, 2013) (noting that the Ninth Circuit "has held that Rule 9(b) prevents plaintiffs from lumping defendants together for the purposes of fraud allegations")). In her SAC, Plaintiff now lists each Defendant under her Elder Abuse claim. However, she merely re-alleges the Entrust corporate structure. SAC ¶¶ 208-216. In addition, Plaintiff continues to improperly group the Entrust Defendants together. See generally SAC ¶¶ 73-89; see also SAC ¶ 217 ("Defendants' conduct resulted in the property of Plaintiff PATRICIA BAILEY WHITE and the California Senior Subclass Members being wrongfully taken"); ¶ 152 ("Defendants willfully and purposefully ignored their own policies and procedures as well as controlling laws and regulations applicable to SDIRA Custodians to facilitate, aid, abet and conceal the fraud perpetrated against Plaintiff and the Class Members and conceal the wrongdoing by PEARSON in the sale of illegal securities").

Accordingly, the Court dismisses Plaintiff's Elder Abuse claim. Plaintiff has not demonstrated that she can allege specific acts by each Defendant in good faith, therefore, the Court does not grant leave to amend.

        3.   <u>Leave to Include New Claims</u>

Plaintiff states that if granted leave to amend, the amended

pleading would include claims of rescission and breach of contract.  The Court denies Plaintiff's request as it is not properly before the Court.  Opp. at 24.

### III. ORDER

For the reasons set forth above, the Court GRANTS without leave to amend the Entrust Defendants' Motion to Dismiss.  This case will proceed against the remaining Defendants, Pearson and Mid-South.

IT IS SO ORDERED.

Dated:   January 30, 2014

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE